

**SO ORDERED.**

**SIGNED this 20th day of January, 2012.**



Robert E. Nugent
United States Chief Bankruptcy Judge

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:                                              )
                                                    )
KENNETH LEE KOLLMORGEN,                             )    Case No. 11-10904
JUDY ELAINE KOLLMORGEN,                             )    Chapter 13
                                                    )
            Debtors.                                )
_____)

## MEMORANDUM OPINION

The feasibility of the Kollmorgens' amended chapter 13 plan turns on the appropriate value of their manufactured home secured to 21st Mortgage Corporation. The Kollmorgens propose to pay a secured value of $5,000 under their plan. 21st Mortgage contends the value of the manufactured home is $16,700. Because the NADA manufactured housing appraisal guidebook more closely approximates the replacement value of the manufactured home under 11 U.S.C. 506(a)(2), 21st Mortgage's value is the

1

appropriate value and the Kollmorgens' amended plan cannot be confirmed as proposed.[1]

Findings of Fact

The Kollmorgens filed their chapter 13 case on April 6, 2011. The Court confirmed their amended plan on July 6, 2011, subject to resolution of the value of their manufactured home which secured the $27,000 claim of 21st Mortgage.[2] Under the amended plan, the Kollmorgens valued the home at $5,000.[3] The Court subsequently conducted an evidentiary hearing on valuation on September 29, 2011 at which time the Kollmorgens presented the appraisal of Dennis Guinn, a provisional appraiser, and 21st Mortgage presented the appraisal of D. Michael Cox.[4]

The subject property is a 1998 Oakwood 16 x 80 foot manufactured home. It is set upon real property in South Haven, Kansas owned by the Kollmorgens and occupied by the Kollmorgens' daughter. Under Kansas law, the manufactured home is personal property and the grant of a security interest in a manufactured home is perfected in accordance with the Kansas Manufactured Housing Act, KAN. STAT. ANN. § 58-4201 *et seq.* (2005 and 2010 Supp.).[5] There is no dispute here that 21st Mortgage has a valid lien in the manufactured home, and claims no lien or interest in the real property on which

---

[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and 1334(b).

[2] Dkt. 44.

[3] Dkt. 31, p. 8, para. d.

[4] Martin J. Peck appeared as attorney for the debtors. Tyson C. Langhofer appeared as attorney for 21st Mortgage. Christopher T. Micale also appeared for the chapter 13 trustee Laurie B. Williams.

[5] *See* KAN. STAT. ANN. § 58-4204(a) (2010 Supp.). The owner of a manufactured home may eliminate its certificate of title by following the process outlined in KAN. STAT. ANN. § 58-4214 (2005), the effect of which is to make manufactured homes permanently affixed to real property an incident of ownership of the real property and subject to any mortgage lien that may exist against the real property. The present case does not involve an eliminated title.

2

the manufactured home is set.

The appraisal methodology used by Mr. Guinn and Mr. Cox to value the mobile home varied widely. Mr. Guinn employed a market based approach while Mr. Cox utilized a cost approach. Mr. Guinn is a provisional licensed appraiser, which means that his appraisals must be reviewed by a certified licensed appraiser because he has not attained the requisite number of supervised appraisal hours. Mr. Guinn obtained no training or certification specific to manufactured homes but has prepared about 20 such appraisals. Leroy Leland, the Harper County appraiser, is Guinn's supervising appraiser who reviewed the appraisal.[6] In his opinion, Guinn's appraisal was supported by the comparable sales and the adjustments, although he could give no specifics and testified that the adjustments and ultimate value assigned by Guinn was a matter of exercising professional judgment.[7] He agreed with Guinn's valuation of $5,000 for the manufactured home as of March 9, 2011.[8] According to Leland, the manufactured home was appraised as 'on-site', without the land. If the home did not have to be moved off the land, it was worth $8,000. And it would cost $5,000-$10,000 to refurbish the manufactured home before resale. Guinn and Leland, in effect, appraised the manufactured home using the comparable sales methodology in a fashion similar to appraising a stick-built house.

Mr. Cox took a different approach. His approach was based upon a cost analysis with various adjustments to the specific property. Cox is a manufactured house appraiser. He has been a certified manufactured house appraiser since 1998, but has no state license as an appraiser. He performs approximately 50 such appraisals per year in a four-state area. Cox has provided expert appraisals for

---

[6] Debtor's counsel qualified Leland as an expert and the bulk of the appraisal testimony came from Leland, not Guinn.

[7] Although Leland personally inspected the mobile home, he did not view or inspect the comparable sales properties.

[8] Ex. A.

court proceedings twice. According to Leland, Mr. Cox's appraisal does not meet the Uniform Standards of Professional Appraisal Practice as his report contains no market data analysis and no comparable sales.[9] The starting point for Mr. Cox's appraisal was a value worksheet.[10] He assigned a base value of $12,763 to the Kollmorgen home that was derived from the NADA Manufactured Housing Appraisal Guide and applied the NADA Guide location adjustment, to arrive at a NADA Guide Book Retail Value of $13,000. From this value Cox made certain cost adjustments for the condition of the home, the presence or absence of certain components, and the cost of repairs, to arrive at a "depreciated replacement value" of $15,333.50 From that result, a further adjustment was made for the absence or presence of certain accessories to arrive at the "indicated value by the cost approach" and rounding that figure to the nearest hundred for an estimated market value of $16,700 for the manufactured home in its present condition.[11] Cox affirmed that the $16,700 value was the value of the manufactured home as it sets and signed a certificate of value for the manufactured home in that amount.[12]

Analysis and Conclusions of Law

Because the Kollmorgen manufactured home is personal property, its value should be

---

[9] Mr. Leland acknowledged that in his capacity as county appraiser he annually appraises some 150-200 manufactured homes as personal property "by Guide."

[10] Ex. 2.

[11] *See* Ex. 1, 2, and B. Mr. Cox's appraisal was dated April 24, 2011. The incorrect value summary was apparently provided in his appraisal report (Ex. 1, p. 5, line 1) and prior to trial the correct, revised value summary was provided (Ex. 2, line 1) that changed the NADA base value from $11,257 to $12,763 and corrected the chart identified in the NADA guide from which he pulled the base value. *Cf.* Ex. 1 and Ex. 2. All adjustments made by Cox remained the same except the components cost adjustment which decreased from $6,874 to $5,874. *Cf.* Ex. 2, line 5 and Ex. 1, p. 5, line 5.

[12] Ex. B, p. 11.

4

determined by 11 U.S.C. § 506(a)(2), which provides:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

Overlaying this is § 506 (a)(1) which codifies the Supreme Court's mandate in *Rash,* that the replacement value is to be determined in light of the purpose of the valuation and the proposed disposition or use of the property.[13] There is no dispute here that the Kollmorgens acquired the manufactured home for personal or family use since Mrs. Kollmorgens' unchallenged testimony establishes that her daughter lives in the home. Because it is personal use property, the second sentence of § 506(a)(2) applies. 21st Mortgage bears the burden of proving the value of the manufactured home.[14]

In *Cook,* this Court analyzed § 506(a)(2) in the context of valuing a motor vehicle for purposes of confirmation of debtors' chapter 13 plan.[15] The concepts discussed in *Cook* apply here. First, the Court concluded that personal use property should be valued as of the date of the valuation hearing.[16] While this will ordinarily be at confirmation, in this case the valuation hearing was held in September, 2011. But both of the appraisals valued the manufactured home in the March-April, 2011 time frame, and the Court received no evidence that these values had changed in six months' time.

Then the Court considered the appropriate method of valuation for personal use property. It

---

[13] *See Associates Commercial Corp. v. Rash,* 520 U.S. 953, 963, 117 S.Ct. 1879, 138 L.Ed. 2d 148 (1997).

[14] *See In re Coleman,* 373 B.R. 907, 911-12 (Bankr. W.D. Mo. 2007).

[15] 415 B.R. 529 (Bankr. D. Kan. 2009).

[16] *Id.* at 533-34.

5

noted that the Supreme Court in *Rash* did not explicitly define "replacement value." But the second sentence of § 506(a)(2) defines replacement value of personal use property as "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined," from which this Court concluded that reconditioning and repair cost adjustments may be made to the merchant retail value to account for depreciation and wear.[17] Both of the vehicle appraisers in *Cook* used NADA retail values, but the Court ultimately adopted and approved the use of NADA "clean retail value" as the "best starting point for valuing personal use vehicles under § 506(a)(2)'s second sentence," with adjustments for repairs and reconditioning.[18] In any event, this Court has expressly approved the use of NADA retail guides for valuing motor vehicles.

Other courts have utilized industry retail value guides such as NADA for determining the amount of allowed secured claims, including those secured by motor vehicles and manufactured or mobile homes.[19] In *In re Coleman*, the court determined the retail merchant value of a mobile home under § 506(a)(2)'s second sentence using the NADA retail guide. That case is instructive and persuasive here.[20] There, Judge Federman recognized differences between the NADA retail guides for vehicles and

---

[17] *Id.* at 534.

[18] *Id.* at 535.

[19] *See In re Cline,* 275 B.R. 523 (Bankr. S.D. Ohio 2001) (certified mobile home appraiser referred to values in an unidentified national guide for mobile home values and utilized an industry-approved form for his appraisal with adjustments for geographic location, condition, and components); *In re Coleman,* 373 B.R. 907 (Bankr. W.D. Mo. 2007) (NADA guide's retail value for mobile home was useful starting point to determine retail merchant value); *In re Scott,* 437 B.R. 168 (Bankr. D. N.J. 2010) (using NADA guide retail value as starting point for determining retail value of vehicle under 506(a)(2)'s second sentence); *In re Eddins,* 355 B.R. 849 (Bankr. W.D. Okla. 2006) (NADA retail value is starting point for valuation of vehicles under 506(a)(2)); *In re Carlson*, 2006 WL 4811331 (Bankr. W.D. Wash. 2006) (using NADA retail value to determine value of mobile home); *In re Zambuto*, 437 B.R. 175 (Bankr. D. N.J. 2010) (NADA retail value as starting point for calculating retail value of vehicle).

[20] 373 B.R. 907 (Bankr. W.D. Mo. 2007).

the NADA value guide for manufactured homes. The NADA guidebook value of manufactured homes is based on the general specifications of the subject home and "is considered a Depreciated Replacement Cost in Retail Dollars. By definition the Depreciated Replacement Cost is the cost to replace and [sic] item less accrued depreciation. . . . Unlike cars, the NADA value as to mobile homes tells what the [mobile home] will actually sell for."[21] It is an appropriate starting point for valuing the mobile home. But because the NADA value presumes the mobile home is in average condition, the NADA value must be adjusted for the cost to bring the home to average condition. Because there was no evidence of what it would cost to make the repairs, the court in *Coleman* determined that the NADA value was the retail value. In our case, Cox's appraisal and testimony supply the evidence of adjustments to the NADA value that was lacking in *Coleman*.

Before addressing Cox's appraisal and adjustments to the NADA value, the Court must make sense of the Cox appraisal exhibits admitted at trial. To do that, one must piece together three exhibits – Ex. 1, Ex. 2, and Ex. B -- to assemble a nearly complete appraisal report that is coherent. Much study indicates that none of these exhibits, standing alone, constitutes the entire appraisal report. Only by comparing and using parts of each exhibit can a coherent whole be assembled, adding to the Court's work here. Further complicating matters is that an incorrect value summary page and incorrect value certificate are included among the exhibits.[22] I conclude that a complete report would consist of Exhibit 1 with the correct value summary page found in Exhibit 2 (with a Guide Book Retail Value of $13,000), the correct component adjustment detail page ($5,874) found in Exhibit B, p. 5, and the correct certificate of value ($16,700) found in Exhibit B, p. 11, substituted for the corresponding or missing

---

[21] *Id.* at 913.

[22] *See* note 11, *supra*.

7

pages contained in Exhibit 1.[23] Working from this "re-assembled," coherent version of the Cox appraisal, we now turn to its substance.

Cox's use of the NADA value guide for manufactured homes as the starting point for determining the retail merchant value of the Kollmorgens' home is appropriate. Cox's two-page appraisal worksheet and instructions are on a National Appraisal System form dated August of 2008. The general instructions indicate that the NADA base value is derived from market data and takes depreciation into account.

> *The N.A.D.A. Manufactured Housing Appraisal Guide is the modified summation approach to value. Values reflected in the publication are based on market data received from a variety of sources in the nine N.A.D.A. regions, and these values represent a sited (delivered and set-up) structure in current year depreciated replacement retail dollars. In the absence of local, reliable, similar comparable sales data, the values are considered to be **FAIR MARKET RETAIL VALUES**.*[24]

Contrary to Leland's criticism of Cox's appraisal, the NADA guide value considers market data in its assigned value and is a valid starting point for retail merchant value.

The adjustments applied by Cox are based upon replacement cost and adjust the retail value to

---

[23] The appraisal report should consist of the following pages: a three-page National Appraisal System Form #2 worksheet and title page "numbered" as Pages A, B and C. *See* Ex. 1, pp. 1-3. The substance of the Cox appraisal then starts with a page containing the description of the subject property (N.A.S. Form #2, Page 1), followed by a value summary (N.A.S. Form #2, Page 2) cross-reference to a separate detail page for each of the adjustments shown on the value summary page (N.A.S. Form #2, Page 3 [Condition and Cost of Repairs adjustment], Page 4 [Components adjustment], and Page 5 [Accessories adjustment]). *See* Ex. 1, p. 4; Ex. 2; Ex. 1, p. 6; Ex. B, p. 5, and Ex. 1, p. 8. Pages 6-8 of the N.A.S. Form #2 are omitted because they pertain to adjustments for a home located in a manufactured home community (park) and comparable sales market data analysis, neither of which were made by Mr. Cox. The next page in the appraisal report is the Professional Standards of the Appraisal Discipline (N.A.S. Form #2, Page 9) with the attached Certificate of Value and Appraiser's Certification. *See* Ex. 1, p. 11; Ex. B, pp. 11-12. The next page of the appraisal report is a page marked as Market Data Return (N.A.S. Form #2, Page 10) and appears to be the final page of Form #2. *See* Ex. 1, p. 9. The remaining pages comprising the appraisal report consist of photographs of the subject property and a location map. *See* Ex. 1, pp. 12-17; Ex. B, p. 21. The Cox appraisal report as "re-assembled" consists of these 19 pages referenced above in the record.

[24] Ex. 1, p. 2.

address the specific components and condition of the subject manufactured home as § 506(a)(2) requires for personal use property. An adjustment for the components and accessories that the subject property has is necessary to compare the subject property to the manufactured home valued by the NADA guide (*i.e.* to compare "apples to apples"). The adjustment for repair costs is an adjustment to the guide value that takes into account the condition of the manufactured home and is also appropriate. These repair costs included repair of vinyl siding, resealing shingles, replacement of carpet in several rooms and wall or floor repair. The amount of Cox's adjustments went largely unchallenged by debtor and are therefore adopted by the Court.[25]

The Court finds that the replacement value of the subject manufactured home under § 506(a)(2) is $16,700 as set forth on the value summary shown by Exhibit 2.

Conclusion

Because the Kollmorgens' amended plan provides 21st Mortgage an allowed secured claim in the amount of $5,000, the amended plan cannot be confirmed and the Court's previous order modifying and confirming the Kollmorgens' amended plan is VACATED. The Kollmorgens' shall have 14 days to amend their plan to treat 21st Mortgage's allowed secured claim in the amount of $16,700 and bring the amended plan back for confirmation hearing. Absent an amendment to the plan, confirmation of Kollmorgens' amended plan is DENIED and their case will be dismissed without further notice.

# # #

---

[25] A deduction to the value of the manufactured home for the cost to move or relocate the manufactured home is unwarranted. No money value is added to the retail value to relocate or set the manufactured home. *See In re Carlson,* 2006 WL 4811331 (Bankr. W.D. Wash. 2006) (NADA retail value does not include moving costs.).

9